**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patrick Wade Bearup, | No. CV-16-03357-PHX-SPL |
| Petitioner, | **ORDER** |
| v. | <u>DEATH PENALTY CASE</u> |
| David Shinn, et al., | |
| Respondents. | |

Before the Court is Petitioner Patrick Wade Bearup's Motion to Stay Proceedings or, Alternatively, to Stay a Ruling on Claim 44. (Doc. 122.) Bearup, an Arizona death row inmate, seeks a stay pending the Arizona Supreme Court's decision in *State v. Cruz*, CR-17-0567-PC. Respondents oppose the motion (Doc. 123.) For the reasons set forth below, the motion will be denied.

## I.    BACKGROUND

On the evening of February 26, 2002, Bearup, Sean Gaines, Jessica Nelson, and Jeremy Johnson beat and shot Mark Mathes to death. Nelson was living at the Mathes residence with Bruce and Marie Mathes. At one point she realized she was missing about $600 and suspected Mark had stolen it. Nelson informed Gaines of her suspicions and Gaines instructed her to call him when Mark returned home.

When Mathes arrived, Nelson invited him to have a beer with her and hang out on the back patio. She called Gaines and told him Mark was home. Shortly after, Gaines, along with Bearup and Johnson, arrived at the Mathes residence armed with a baseball bat and a

shotgun. They beat Mathes, put him in the trunk of their car, and drove to the Crown King area north of Phoenix. Gaines and Nelson stripped him to make the body more difficult to identify. As Nelson was attempting to remove a ring from Mark's finger, Bearup approached and cut the finger off with a pair of wire clippers. Mark was then thrown over a guardrail. While he lay in the ravine, Gaines shot him twice.

Johnson and Nelson pleaded guilty to second-degree murder and kidnapping. Bearup was indicted on one count of first-degree murder and one count of kidnapping. The State alleged two aggravating factors: a previous conviction for a serious offense, A.R.S. § 13–703(F)(2), and the commission of the offense in an especially heinous, cruel, or depraved manner, (F)(6).

At trial, Bearup presented alibi and mistaken identity defenses. The jury convicted him of first-degree murder and kidnapping and found both the (F)(2) and (F)(6) aggravating factors. Bearup represented himself at sentencing and presented no mitigating evidence. The jury returned a verdict of death for the murder.

The Arizona Supreme Court affirmed the convictions and sentences on direct appeal. *State v. Bearup*, 221 Ariz. 163, 166–67, 211 P.3d 684, 687–88 (2009). After unsuccessfully pursuing post-conviction relief ("PCR") in state court, Bearup filed a petition for writ of habeas corpus in this Court on August 25, 2017, and an amended petition on September 18, 2017. (Docs. 34, 39.)

Throughout Bearup's trial, the court instructed the jury that if they returned with a verdict of a life sentence, there was a possibility that Bearup would be paroled or released after 25 years. (*See, e.g.*, ROA 208 at 15; RT 11/7/06 at 4, 131; RT 2/1/07 at 17.) However, because the felonies for which Bearup was charged occurred after 1994, he was ineligible for parole as a matter of Arizona law. *See Lynch v. Arizona*, 136 S. Ct. 1818, 1819 (2016) (per curiam) (citing A.R.S. § 41-1604.09(I)).

In Claim 44 of his amended petition, Bearup alleged, pursuant to *Lynch* and *Simmons v. South Carolina*, 512 U.S. 154 (1994), that the trial court's erroneous instructions violated his rights under the Eighth and Fourteenth Amendments. (Doc. 39 at 382–84.) Bearup acknowledged that he did not raise the claim in state court. (*Id.* at 382.)

He stated, however, that he "reserve[d] the right to timely request a limited stay and abeyance pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), to return to state court and present this unexhausted claim." (*Id.*) Now, three years later, he has made that request. (Doc. 122.) In the alternative, he asks the Court to stay its ruling on Claim 44. (*Id.*)

These requests are prompted by the Arizona Supreme Court's decision to hold oral argument in *State v. Cruz* to consider whether *Lynch* represented a "significant change in the law" that applies retroactively under Rule 32.1(g) of the Arizona Rules of Criminal Procedure. *See* Order, *State v. Cruz*, No. CR-17-0567-PC (Ariz. Sup. Ct. Apr. 1, 2020). (Doc. 122-2, Ex. 1.) Argument was held on June 2, 2020. According to Bearup, "[t]he tenor of the argument strongly suggests the court will conclude that *Lynch* caused a significant change in the law authorizing postconviction challenges to *Simmons* violations." (Doc. 122 at 4.)

## II.    APPLICABLE LAW

Bearup's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(b)(1)(A). Although AEDPA does not deprive courts of the authority to stay habeas corpus petitions, it "does circumscribe their discretion." *Rhines*, 544 U.S. at 276. The Supreme Court has emphasized that the stay and abeyance of federal habeas petitions is available only in limited circumstances. *Id.* at 277. "Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." *Id.*

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). In Arizona, there are two avenues for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner is precluded from relief on any claim that could have been raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.2(a)(3). The preclusive effect of Rule 32.2(a)

may be avoided only if a claim falls within certain exceptions and the petitioner can justify why the claim was omitted from a prior petition or not presented in a timely manner. *See* Ariz. R. Crim. P. 32.1(d)–(h), 32.2(b), 32.4(a)

When a petitioner has an available remedy in state court, it is appropriate for the federal court to stay the habeas proceedings if there was good cause for the petitioner's failure to exhaust his claims first in state court, his unexhausted claims are potentially meritorious, and there is no indication that he engaged in intentionally dilatory litigation tactics. *See Rhines*, 544 U.S. at 277.

## III.   ANALYSIS

Bearup did not raise this claim in state court. (*See* Doc. 39 at 382.) In their response to Bearup's amended habeas petition, Respondents argued that a stay would be futile because the claim is procedurally defaulted and barred from federal review and because *Lynch* did not represent a significant change in the law that would apply retroactively under Rule 32.1(g). (Doc. 45 at 220–22.) In his reply brief and again in his request for a stay, Bearup contends that default of the claim is excused under the futility doctrine and that *Lynch* satisfies Rule 32.1(g). (Doc. 53 at 206–07; Doc. 122 at 3–5.) Neither argument is persuasive.

### A.   Futility

Bearup argues that his failure to exhaust this claim is excused pursuant to 28 § 2254(b)(1)(B). (*See* Doc. 122 at 2–3.) Under § 2254(b)(1)(B), excuse from exhaustion is available when either "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." Bearup argues there was no available state corrective process because it would have been futile to raise this claim in Arizona courts before the *Lynch* decision in in 2016. (Doc. 122 at 3.)

The Ninth Circuit has excused the exhaustion requirement where resort to state remedies would have been futile. *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981). In *Sweet*, the court defined the futility doctrine as excusing exhaustion of state remedies where the "highest state court has recently addressed the issue raised in the petition and resolved

it adversely to the petitioner, in the absence of . . . any [ ] indication that the state court intends to depart from its prior decisions." *Id.*

The United States Supreme Court has rejected the futility doctrine. "[T]he futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial. If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim." *Engle v. Isaac*, 456 U.S. 107, 130 (1982). The Court explained that "[e]ven a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid." *Id.*

Bearup cites *Lynce v. Mathis*, where the Court in dicta suggested that the futility doctrine remains viable. 519 U.S. 433 n.3. However, just one year after *Lynce*, the Court again rejected the futility doctrine, holding that "futility cannot constitute cause [to excuse exhaustion] if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Engle*, 456 U.S. at 130). The Ninth Circuit has likewise rejected the futility doctrine.[1] *Roberts v. Arave*, 847 F.2d 528, 530 (9th Cir. 1988) ("[T]he apparent futility of presenting claims to state courts does not constitute cause for procedural default."); *see Noltie v. Peterson*, 9 F.3d 802, 805 (9th Cir. 1993). Other circuits have done the same. *See Parker v. Kelchner*, 429 F.3d 58, 63 (3rd Cir. 2005) ("Our sister Circuits that have considered the issue have similarly concluded that the exhaustion requirement is not excused merely because a petitioner's claim will likely be denied on the merits in state court.").

Bearup's failure to exhaust this claim is not excused as futile under § 2254(b)(1)(B).

**B.    Rule 32.1(g)**

Bearup contends that under Rule 32.1(g) of the Arizona Rules of Criminal Procedure, the United States Supreme Court's decision in *Lynch* affords an available remedy in state court. Rule 32.1(g) provides an exception to preclusion where "[t]here has

---

[1] In *Alfaro v. Johnson*, however, the Ninth Circuit noted that it had not expressly overruled *Sweet* and, citing *Lynce*, indicated that the viability of the futility doctrine remains an open question in the circuit. 862 F.3d 1176, 1181 & n.2 (9th Cir. 2017).

been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence." Ariz. R. Crim. P. 32.1(g).

Arizona courts have characterized a significant change in the law as a "transformative event," *State v. Shrum*, 220 Ariz. 115, 118, 203 P.3d 1175, 1178 (2009), and a "clear break" or "sharp break" with the past. *State v. Slemmer*, 170 Ariz. 174, 182, 823 P.2d 41, 49 (1991). "The archetype of such a change occurs when an appellate court overrules previously binding case law." *Shrum*, 220 Ariz. at 118, 203 P.3d at 1178. A statutory or constitutional amendment representing a definite break from prior law can also constitute a significant change in the law. *Id.* at 119, 203 P.3d at 1179.

*Simmons* held that when future dangerousness is an issue in a capital sentencing determination, the defendant has a due process right to require that his sentencing jury be informed of his ineligibility for parole. 512 U.S. at 156. "The State may not create a false dilemma by advancing generalized arguments regarding the defendant's future dangerousness while, at the same time, preventing the jury from learning that the defendant never will be released on parole." *Id.* at 171.

*Lynch* applied *Simmons* to a capital sentencing in Arizona. In *Lynch*, the defendant was convicted of murder and other crimes. 136 S. Ct. at 1818. Before the penalty phase of his trial began, the state successfully moved to prevent his counsel from informing the jury that, if he did not receive a death sentence, he would be sentenced to life in prison without possibility of parole. *Id.* at 1819. The jury sentenced him to death. *Id.* On appeal, Lynch argued that because the state had made his future dangerousness an issue in arguing for the death penalty, the jury should have been given a *Simmons* instruction stating that the only non-capital sentence he could receive under Arizona law was life imprisonment without parole. *Id.* The Arizona Supreme Court affirmed, holding that the failure to give the *Simmons* instruction was not error because Lynch could have received a life sentence that would have made him eligible for release after 25 years—even though any such release would have required executive clemency or legislative reform. *Id.* at 1820.

The United States Supreme Court reversed. *Id.* The Court reiterated that under *Simmons* and its progeny, "where a capital defendant's future dangerousness is at issue,

and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole," the Due Process Clause "entitles the defendant to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel." *Id.* at 1818 (internal quotations omitted).

*Lynch* does not represent a significant change in the law. It simply applies existing law to an Arizona case. It is not a transformative event of the kind described by Arizona courts in interpreting Rule 32.1(g). In *Shrum*, for example, the Arizona Supreme Court cited *Ring v. Arizona*, 536 U.S. 584 (2002), as a "significant change in the law." 220 Ariz. at 119, 203 P.3d at 1179. *Ring* "expressly overruled" *Walton v. Arizona*, 497 U.S. 639 (1990). As the Arizona Supreme Court explained, "before *Ring*, a criminal defendant was foreclosed by *Walton* from arguing that he had a right to trial by jury on capital aggravating factors; *Ring* transformed existing Sixth Amendment law to provide for just such a right." *Shrum*, 220 Ariz. at 119, 203 P.3d at 1179.

In contrast to the holding in *Ring*, which expressly overruled precedent and invalidated Arizona's capital sentencing scheme, *Lynch* did not transform Arizona law. The holding does not constitute a significant change in law for purposes of Rule 32.1(g). *See Boggs v. Ryan*, No. CV-14-02165-PHX-GMS, 2017 WL 67522, at *3 (D. Ariz. Jan. 6, 2017); *Garza*, No. CV-14-01901-PHX-SRB, 2017 WL 105983, at *3; *Garcia v. Ryan*, No. CV-15-00025-PHX-DGC, 2017 WL 1550419, at *3 (D. Ariz. May 1, 2017).

Even if *Lynch* did represent a significant change in the law, it does not apply retroactively. In determining whether a new constitutional principle applies retroactively, Arizona courts employ the federal retroactivity standard announced in *Teague v. Lane*, 489 U.S. 288 (1989). *See Slemmer*, 170 Ariz. at 182, 823 P.2d at 49. Under *Teague*, a new rule will be applied retroactively only if it (1) is substantive in that it alters the range of conduct or class of people that the law punishes or (2) it is a watershed rule of criminal procedure that implicates the fundamental fairness of the trial. *Teague*, 489 U.S. at 311. *Lynch* announced a procedural rule by applying *Simmons* to Arizona capital sentencing. In *O'Dell v. Netherland*, 521 U.S. 151, 167 (1997), the Supreme Court rejected the argument that *Simmons* represented a "watershed" rule of criminal procedure that applied retroactively.

Like *Simmons*, *Lynch* is procedural and non-retroactive. *See, e.g.*, *Johnson v. Ryan*, No. CV-18-00889-PHX-DWL, 2019 WL 1227179, at *2 (D. Ariz. Mar. 15, 2019); *Armstrong v. Ryan*, No. CV-15-00358-TUC-RM, 2017 WL 3970327, at *2 (D. Ariz. September 8, 2017). In *Johnson*, the court found *Lynch* non-retroactive because it "didn't announce a new rule of substantive law and the procedural rule it applied doesn't amount to a 'watershed' rule of criminal procedure." 2019 WL 1227179, at *2. The court noted that since 1989, when *Teague* was decided, the Supreme Court has not found that any rule falls within the "watershed" exception, despite "at least eleven opportunities to do so." *Id.* (quoting *Leavitt v. Arave*, 383 F.3d 809, 825 (9th Cir. 2004)); *see Beard v. Banks*, 542 U.S. 406, 417 (2004) ("[B]ecause any qualifying rule would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge, it should come as no surprise that we have yet to find a new rule that falls under the second *Teague* exception.") (interior quotations omitted); *Ramos v. Louisiana*, 140 S. Ct. 1390, 1407 (2020) ("*Teague*'s test is a demanding one, so much so that this Court has yet to announce a new rule of criminal procedure capable of meeting it."). Because Bearup would not be entitled to retroactive application of *Lynch*, his claim fails to meet the exception to preclusion set out in Rule 32.1(g).

Respondents also argue that even if the Arizona Supreme Court in *Cruz* finds *Lynch* to be a significant change in the law under Rule 32.1(g), the ruling would not provide Bearup a vehicle for relief because he did not request a *Simmons* instruction at trial. (Doc. 123 at 3.) The Court agrees.

In *State v. Bush*, 244 Ariz. 575, 593, 423 P.3d 370, 388 (2018), *cert. denied*, 139 S. Ct. 1546 (2019), the Arizona Supreme Court held that "*Simmons* 'relief is foreclosed by [the defendant]'s failure to request a parole ineligibility instruction at trial.'" (quoting *Campbell v. Polk*, 447 F.3d 270, 289 (4th Cir. 2006)). The court explained that the caselaw supports a "narrow interpretation of *Simmons*"; i.e., that "*Simmons* [entitles] the defendant to inform the jury, through instruction or argument, of his parole ineligibility." *Bush*, 244 Ariz. at 593, 423 P.3d at 388; *see O'Dell*, 521 U.S. at 167 (explaining that *Simmons* establishes a "narrow right of rebuttal").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The court first noted that *Simmons* was a split decision. *Bush*, 244 Ariz. at 592, 423 Ariz. at 387. Four justices joined the plurality holding that "where the defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." *Simmons*, 512 U.S. at 156. Justice O'Connor's concurring opinion is controlling because it represents the narrowest grounds on which the majority agreed. She wrote that when the prosecution seeks to show a parole-ineligible defendant's future dangerousness, "the defendant should be allowed to bring his parole ineligibility to the jury's attention—by way of argument by defense counsel or an instruction from the court—as a means of responding to the State's showing of future dangerousness." *Id.* at 177 (O'Connor, J., concurring). Under those circumstances, she explained, "due process entitles the defendant to inform the capital sentencing jury—by either argument or instruction—that he is parole ineligible." *Id.* at 178.

The Arizona Supreme Court further observed that "[i]n every case in which the Supreme Court or this Court has found reversible *Simmons* error, the trial court either rejected the defendant's proposed jury instruction regarding his ineligibility for parole, prevented defense counsel 'from saying anything to the jury about parole ineligibility,' or both." *Bush*, 244 Ariz. at 593, 423 P.3d at 388 (quoting *Simmons*, 512 U.S. at 175 (Ginsburg, J., concurring)).

The court also cited *Townes v. Murray*, 68 F.3d 840, 850 (4th Cir. 1995). There, the Fourth Circuit held that "the fact that a jury was not informed of the defendant's parole ineligibility would not violate the defendant's due process rights, as recognized by *Simmons*, if that lack of information was due to the defendant's own inaction." Accordingly, "the defendant's right, under *Simmons*, is one of opportunity, not of result." *Id.*

Bearup represented himself at sentencing and presented no mitigation or argument. He did not request a *Simmons* instruction or otherwise ask that the jury be informed that he was ineligible for parole. Thus, he "has not shown that he was deprived of the right to inform the jury of his parole ineligibility" because "the trial court neither refused to

instruct, nor prevented [him] from informing, the jury regarding his parole ineligibility." *Bush*, 244 Ariz. at 593, 423 P.3d at 388. Because Bearup's rights under *Simmons* were not violated, *Lynch* would not "probably overturn [his] judgment or sentence" under Rule 32.1(g).

## III.   CONCLUSION

Bearup is not entitled to a stay to return to state court to exhaust Claim 44. The futility doctrine does not excuse the claim's default. *Lynch* is not a significant change in the law for purposes of Rule 32.1(g), nor would it apply retroactively to his case. Even if *Lynch* did represent a significant change in the law with retroactive application, it would not offer an avenue for relief on the facts of this case because Bearup did not request a parole ineligibility instruction at trial.

Accordingly,

**IT IS HEREBY ORDERED denying** Bearup's motion to stay (Doc. 122).

Dated this 16th day of September, 2020.

Honorable Steven P. Logan
United States District Judge