**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Patrick Wade Bearup,

           Petitioner,

v.

Ryan Thornell, et al.,

           Respondents.

No. CV-16-03357-PHX-SPL

**ORDER**

<u>DEATH PENALTY CASE</u>

       Bearup moves to reconsider the Court's 2020 Order denying his motion to stay this case pending a decision in *State v. Cruz* (*Cruz I*), CR 17-0567-PC (Ariz.). (Docs. 122, 125, and 151; Doc. 122-2 at 3.) In his motion to reconsider, Bearup does not seek reconsideration of the denial of his 2020 motion to stay. Instead, for the first time, he asks to stay this case under *Rhines v. Weber*, 544 U.S. 269 (2005), so that he may exhaust some of his habeas claims in state court. (Doc. 151.) In doing so, he does seek reconsideration of two findings in the 2020 Order that would, if not reversed, defeat a *Rhines* stay. (*Id.*) The Court will therefore construe the motion to reconsider as a request for a *Rhines* stay in the first instance. But in assessing the request for a *Rhines* stay, the Court will address Bearup's request to reconsider the 2020 Order's two findings relevant to the *Rhines* stay request.

       Bearup also moves for authorization for his habeas counsel to represent him in state court to exhaust Claim 44 (as well as Claim 45). (Doc. 152.) Respondents oppose a *Rhines* stay and take no position on authorization. (*Id.* at 2; Doc. 154.) For the reasons below, the

Court will deny both motions.

**I.    BACKGROUND**

In 1993, Arizona's Legislature eliminated parole for felonies committed after December 31, 1993. A.R.S. § 41-1604.09(I) (West 1993). In 1994, the United States Supreme Court held in *Simmons v. South Carolina* that when a capital defendant's future dangerousness is at issue and state law bars his release on parole, due process entitles him to inform the jury—through argument or jury instruction—that he would be ineligible for parole if not sentenced to death. 512 U.S. 154, 156, 177–78 (1994); *see also Cruz v. Arizona* (*Cruz II*), 598 U.S. __, 143 S. Ct. 650, 655 (2023).

Years after the enactment of A.R.S. § 41-1604.09(I) and the decision in *Simmons*, a grand jury indicted Bearup for a 2002 kidnapping and murder. (R.O.A. 1.) The State sought a death sentence for the murder. (R.O.A. 17.) The parties' joint questionnaire to prospective jurors stated that, if Bearup was convicted of murder, but not sentenced to death, the trial court would sentence Bearup to life in prison either with or without the "possibility of parole." (R.O.A. 210 at 17; R.T. 11/6/06 at 3.) After the prospective jurors finished the questionnaire, and the court conducted voir dire, the court empaneled a jury. (R.T. 11/14/06 at 13.) The jury found Bearup guilty as charged. *State v. Bearup*, 211 P.3d 684, 688 (Ariz. 2009).

At the trial's penalty phase for the murder, Bearup represented himself. (R.T. 1/29/07 at 9.) Bearup did not request a *Simmons* instruction informing the jury of his parole ineligibility. (R.T. 1/31/07 at 6–7; R.T. 2/1/07 at 6, 11–13.) Without objection, the court instructed the jurors that if they spared Bearup's life, the court would sentence him to life in prison either with, or without, the "possibility of *release*." (R.T. 1/31/07 at 6–7; R.T. 2/1/07 at 17) (emphasis added). The jury sentenced Bearup to death. *Bearup*, 211 P.3d at 688. Bearup, again represented by counsel, did not raise a *Simmons* claim on direct appeal or on postconviction review (PCR) and was denied relief on each. *Id*. at 696. (*See* Opening Brief; Doc. 46-2, Ex. RRRRR; Doc. 46-3, Ex. YYYYYY; 9/21/16 Order.)

In 2015, the Arizona Supreme Court held in *State v. Lynch* (*Lynch I*) that a trial

1    court did not err in refusing a *Simmons* instruction, citing A.R.S. § 41-1604.09(I), because

2    the defendant was eligible for other forms of release, such as clemency. 357 P.3d 119, 138

3    (Ariz. 2015) (citing A.R.S. § 13-703(A), renumbered as § 13-751(A)). In May 2016, the

4    United States Supreme Court reversed *Lynch I*, holding that future clemency, or enactment

5    of a statute restoring parole, did not "diminish[ ] a capital defendant's right to inform a jury

6    of his parole ineligibility." *Lynch v. Arizona* (*Lynch II*), 578 U.S. 613, 615 (2016) (citing

7    *Simmons*, 512 U.S. at 166, 177).

8          On October 3, 2016, Bearup commenced this habeas case, and the Court appointed

9    the Arizona Federal Public Defender's Office to represent him in this case but barred

10   counsel from representing him "in state forums or prepare any state court pleadings" absent

11   the Court's "express authorization." (Doc. 1; Doc. 6 at 1.) Bearup filed a petition in 2017.

12   (Doc 39.) In Claim 44, Bearup claims that the trial court violated his Fourteenth

13   Amendment due process rights under *Simmons* and *Lynch II* by not instructing the jury that

14   he was ineligible for parole.[1] (Doc. 39 at 382–84.) He acknowledges that he did not raise

15   this claim in state court but purported to reserve the right to request a stay under *Rhines* so

16   that he could do so. (*Id*. at 382.) In their Answer, Respondents opposed a stay because the

17   *Simmons/Lynch II* claim was then technically exhausted, as Bearup never raised it in state

18   court, and he lacked good cause for not having done so, and because the claim otherwise

19   lacked merit. (Doc. 45 at 217–19, 220–24.) In his Reply, Bearup disagreed with the

20   Respondents' contentions and clarified that he was not *then* seeking a *Rhines* stay. (Doc.

21   53 at 206–12 and n.44.)

22         In April 2020, after the parties briefed Bearup's habeas claims, the Arizona Supreme

23   Court agreed to review *Cruz I*  to address whether *Lynch II* was "a significant change in

---

[1] In Claim 44, Bearup also asserts that the incorrect jury instruction on his parole eligibility also violates his Eighth Amendment right to a reliable penalty phase. (Doc. 39 at 382–84.) Because Bearup does not seek a *Rhines* stay to exhaust this subclaim, the Court will not consider it here.

the law" under Arizona Rule of Criminal Procedure 32.1(g).[2] (Doc. 122-2 at 3.) Bearup then filed his 2020 motion to stay this habeas case pending the decision in *Cruz I*, noting that he would seek a *Rhines* stay to exhaust Claim 44 in state court only if *Cruz I* held that *Lynch II* was a significant change. (*Id.* at 1–2.) Before the Arizona Supreme Court resolved *Cruz I*, the Court denied the stay motion finding the *Simmons/Lynch II* claim was technically exhausted where Bearup did not timely raised it in state court, and that *Lynch II* was not a significant change in the law under Rule 32.1(g). (Doc. 125 at 5–7.) The Court further found the *Simmons/Lynch II* claim meritless, as Bearup did not "ask that the jury be informed" of his parole ineligibility at trial. (*Id.* at 8–10.)

In 2021, the Arizona Supreme Court held in *Cruz I* that *Lynch II* was not a significant change in the law under Rule 32.1(g). 487 P.3d 991 (Ariz. 2021). In 2023, the Supreme Court reversed the Arizona Supreme Court's holding in *Cruz I*, that *Lynch II* "was not a significant change in the law for purposes of [Arizona Rule of Criminal Procedure] 32.1(g)" and that *Cruz I* was not based on an adequate and independent state-law ground so as to bar Cruz's filing of a successive PCR petition asserting a *Lynch II* claim. *Cruz II*, 143 S. Ct. 650, 655 (2023) (quoting Ariz. R. Crim. P. Rule 32.1(g)). The Court also vacated "the judgments" and remanded "the cases" of other Arizona death-row prisoners "to the Superior Court of Arizona, Maricopa County for further consideration in light of *Cruz* [*II*]." *Burns v. Arizona*, 21-847, 598 U.S.__ (Mar. 6, 2023).[3] In light of *Cruz II*, Bearup filed his motion to reconsider findings in the 2020 Order denying a stay and motion for authorization, which are fully briefed. (Docs. 151–52, 154–55.)

. . . .

. . . .

---

[2] Under Rules 32.1(g) and 32.2(b), a defendant may obtain relief on successive PCR if an applicable, "significant change in the law . . . would probably overturn the defendant's judgment or sentence." Ariz. R. Crim. P. 32.1(g) and 32.2(b).

[3] Prisoners Johnathan Burns, Steve Boggs, Ruben Garza, Fabio Gomez, Steven Newell, and Stephen Reeves filed a joint petition for a writ of certiorari that hinged on the holding in *Cruz II*.

1   **II.   APPLICABLE LAW**

2       **A.   *Rhines Stay***

3       Under *Rhines*, the Court may stay a habeas case that contains both exhausted and

4   unexhausted claims while the petitioner exhausts his unexhausted claims in state court,

5   before returning to the habeas court for review of the fully exhausted petition. 544 U.S. at

6   271–79. A *Rhines* stay is proper only if the petitioner shows (1) "good cause" for the failure

7   to exhaust, (2) the unexhausted claim is "potentially meritorious," and (3) the petitioner

8   did not "engage[] in intentionally dilatory litigation tactics." *Id*. at 277–78. Because a

9   *Rhines* stay applies solely to a petition containing both exhausted and unexhausted claims,

10   i.e., a "mixed petition," this Court first decides whether Claim 44 is unexhausted. *See King*

11   *v. Ryan*, 564 F.3d 1133, 1140 (9th Cir. 2009); *see also*, *Bearup v. Shinn*, No. CV-16-03357-

12   PHX-SPL (D. Ariz. Jan. 26, 2023) (Doc. 150).

13       **B.   *Exhaustion***

14       A petitioner has not exhausted a habeas claim in state court "if he has the right under

15   the law of the State to raise, by any available procedure, the question presented." 28 U.S.C.

16   § 2254(c). A claim is exhausted if (1) it has been fairly presented to the highest state court

17   with jurisdiction to consider it or (2) no state remedy remains available to exhaust the claim.

18   *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996). No state remedy remains available if

19   the state's procedural rules bar a state court from considering the claim, resulting in the

20   claim being "technically exhausted." *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006) (citing

21   *Gray v. Netherland*, 518 U.S. 152, 161 (1996)); *Coleman v. Thompson*, 501 U.S. 722, 732

22   (1991) (citing 28 U.S.C. § 2254(b); *Engle v. Isaac*, 456 U.S. 107, 125–26 n.28 (1982))

23   (claims defaulted in state court); *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007).

24   Hence, a *Rhines* stay should not be granted if a petition contains only claims that are either

25   actually, or technically, exhausted. *See*, *e.g.*, *Pritchett v. Gentry*, No. 2:17-cv-01694-JAD-

26   DJA, 2022 WL 4366996, at *4 (D. Nev. Sept. 21, 2022) (noting "[t]he point of [the] stay

27   is to allow" presentment of "unexhausted claims" in state court); *White v. Ryan*, No. CV-

28   09- 2167-PHX-FJM (LOA), 2010 WL 1416054, at *12 (D. Ariz. Mar. 16, 2010) (denying

1    *Rhines* stay of a petition that has only exhausted or technically exhausted claims).

2    **C.    *Arizona's Bar on Successive Postconviction-Relief Claims***

3    Rule 32 of the Arizona Rules of Criminal Procedure governs postconviction review

4    for those convicted and sentenced following a trial. Ariz. R. Crim. P. 32.1. As relevant

5    here, postconviction relief is available for a constitutional violation under Rule 32.1(a), and

6    "where there has been a significant change in the law, if applicable to the defendant's case,

7    [that] would probably overturn the defendant's judgment or sentence," under Rule 32.1(g).

8    A constitutional claim under Rule 32.1(a) is precluded if it was "waived at trial or on

9    appeal, or in any previous post-conviction proceeding, except when the claim raises a

10   violation of a constitutional right that can only be waived knowingly, voluntarily, and

11   personally by the defendant." Ariz. R. Crim. P. 32.2(a)(3). A claim under Rule 32.1(g) is

12   not precluded under Rule 32.2(a)(3), but if raised in a successive or untimely post-

13   conviction notice, the defendant must explain the reasons for not raising the claim in a

14   previous petition or in a timely manner. Ariz. R. Crim. P. 32.2(b).

15   **D.    *The Rhines Test Within the Context of Bearup's Motion to Reconsider***

16   In the 2020 Order, the Court found Bearup's *Simmons/Lynch II* claim was

17   technically exhausted and otherwise meritless. Bearup asks the Court to reconsider and

18   reverse those findings because he cannot obtain a *Rhines* stay unless his *Simmons/Lynch II*

19   claim is unexhausted and has potential merit. *See Rhines*, 544 U.S. at 271–79. To that end,

20   the Court will decide whether to grant the *Rhines* stay by determining whether to reconsider

21   those two findings.

22   Reconsideration of an order is proper if the Court (1) is presented with newly

23   discovered evidence, (2) committed clear error or the initial decision was manifestly unjust,

24   or (3) if there is an intervening change in controlling law." *See Sch. Dist. No. 1J v. ACandS,*

25   *Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citing *All Hawaii Tours, Corp. v. Polynesian*

26   *Cultural Ctr.*, 116 F.R.D. 645, 648 (D. Haw. 1987), *reversed on other grounds by* 855 F.2d

27   860 (9th Cir. 1988)); *see also* LRCiv 7.2(g)(1) (The Court will reconsider an order based

28   on either "a showing of manifest error or . . . new facts or legal authority that could not

- 6 -

have been brought to its attention earlier with reasonable diligence.").

**III.   DISCUSSION ON MOTION TO RECONSIDER**

  **A.   *Bearup's Simmons/Lynch II Claim Is Unexhausted***

   Bearup argues that the Court should reconsider and reverse its prior technical-exhaustion finding based on *Cruz II*, an intervening change in controlling law. (Doc. 151 at 5–6.) In light of *Cruz II*, the Court agrees with Bearup. *See* 143 S. Ct. at 655.

   Respondents assert that the *Simmons/Lynch II* claim remains exhausted despite *Cruz II*, in essence, because it is meritless. (Doc. 154 at 7–9.) But under Rule 32.1(g), the existence of an applicable significant change in the law permits review of a claim on successive PCR. *See Cruz II*, 143 S. Ct. at 658 (acknowledging that "Rule 32.1(g) allows defendants to file a successive or untimely postconviction petition if there has been 'a significant change in the law'"); *see also*, *e.g.*, *State v. Lawrence*, No. 2 CA-CR 2016-0080-PR, 2016 WL 3220970, at *2, ¶ 7 (Ariz. Ct. App. June 10, 2016) (citing Ariz. R. Crim. P. 32.1(g)) (stating that "under Rule 32.2(b), a defendant may avoid preclusion by showing . . . a significant change in the law"); *State v. Shrum*, 203 P.3d 1175, 1178 (Ariz. 2009) ("The rationale for the Rule 32.1(g) exception from waiver and preclusion is apparent: A defendant is not expected to anticipate significant future changes of the law in his of-right PCR proceeding or direct appeal.").

   Bearup's *Simmons/Lynch II* claim is no longer technically exhausted under *Cruz II*, as he may now pursue it on successive PCR under Rules 32.1(g) and 32.2(b). *See Van Winkle v. Thornell*, No. CV-18-03290-PHX-MTL, 2023 WL 3321709, at *4 (citing 28 U.S.C. § 2254(c)); *cf. Newman v. Norris*, 597 F.Supp.2d 890, 896 (W.D. Ark. 2009) (granting *Rhines* stay to exhaust in state court as a matter of comity); *Rodriguez v. Uhler*, 15cv09297 (GBD) (DF), 2017 WL 9807068, at *8 (S.D.N.Y. Oct. 23, 2017) (same). Accordingly, the Court grants reconsideration as to its previous finding in the 2020 Order and finds that Bearup's *Simmons/Lynch II* claim is unexhausted.

  **B.   *Bearup's Simmons/Lynch II Claim Lacks Potential Merit***

   Bearup also argues that the Court should reconsider and reverse its prior finding that

his *Simmons*/*Lynch II* claim was meritless, implying that the finding was clearly erroneous because the claim has potential merit under *Rhines*. (Doc. 151 at 8–12.) Although this "potential merit," standard is not onerous, *Rhines*, 544 U.S. at 277, a claim lacks potential merit if "it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005). Put differently, a claim has potential merit "unless 'it is perfectly clear that the petitioner has no hope of prevailing.'" *See Dixon v. Baker*, 847 F.3d 714, 722 (9th Cir. 2017) (quoting *Cassett*, 406 F.3d at 624). In short, a claim lacking potential merit is "plainly meritless." *See Rhines*, 544 U.S. at 277 (citing 28 U.S.C. § 2254(b)(2)) (noting that "the district court would abuse its discretion if it were to grant [petitioner] a stay when his unexhausted claims are plainly meritless").

In finding that Bearup's *Simmons*/*Lynch II* claim lacked merit, the 2020 Order relied on the Arizona Supreme Court's holding in *State v. Bush* that a defendant who does not "request a parole ineligibility instruction at trial" does not merit relief under *Simmons*. 423 P.3d 370, 388, ¶ 74 (Ariz. 2018), *cert. denied*, 139 S. Ct. 1546 (2019). Because Bearup did not request a jury instruction or to argue his parole ineligibility at trial, this Court found that the trial court had not violated due process under *Simmons*, Doc. 125 at 8–10. *See, e.g.*, *Morris v. Thornell*, No. CV-17-00926-PHX-DGC, 2023 WL 4237334, at *7 (D. Ariz. June 28, 2023); *Payne v. Thornell*, No. CV-20-0459-TUC-JAS, 2023 WL 4237335, at *3–4 (D. Ariz. June 28, 2023).

Bearup does not present anything that persuades this Court to reconsider that finding. He argues that the incorrect instruction regarding his parole "eligibility" offends "basic nations of fairness and due process." (Doc. 151 at 10–11.) An incorrect jury instruction may violate the basic due process guarantee of "fundamental fairness" if "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

"Capital sentencing proceedings must of course satisfy the dictates" of due process. *Clemons v. Mississippi*, 494 U.S. 738, 746 (1990). Capital defendants are denied due

process "when the death sentence was imposed, at least in part, on the basis of information which [the defendant] had no opportunity to deny or explain." *Gardner v. Florida*, 430 U.S. 349, 362 (1977). But under *Simmons*, due process entitles a capital defendant the *opportunity* to *rebut* alleged future dangerousness by having the jury informed of the defendant's parole ineligibility. *Simmons*, 512 U.S. at 156–78; *see also Bush*, 423 P.3d at 386–88, ¶¶ 69–75. Thus, *Simmons* expressly flows from the opportunity to have a jury informed of his parole ineligibility. *See Simmons*, 512 U.S. at 161 (Blackmun, J., joined by Stevens, Suter, and Ginsburg, JJ.) (citing *Gardner*, 430 U.S. at 362); *id*. at 175 (O'Connor, J., joined by Rehnquist, C.J., and Kennedy, J., concurring in judgment) (citing *Skipper v. South Carolina*, 476 U.S. 1, 5 n.1 (1986), and quoting *Gardner*, 340 U.S. at 362). As the Fourth Circuit held in *Townes v. Murray*, the right under *Simmons* "is one of opportunity, not of result." 68 F.3d 840, 850 (4th Cir. 1995); *accord Morris v. Thornell*, No. 17-00926-PHX-DGC (D. Ariz. June 28, 2023); *see also Bush*, 423 P.3d at 388, ¶ 74 (quoting *Townes*, 68 F.3d at 850). *But see State v. Laney*, 627 S.E.2d 726, 730 (S.C. 2006) (holding that when the requirements of *Simmons* are satisfied, "the trial judge shall charge the jury, whether requested or not, that life imprisonment means until the death of the defendant without the possibility of parole").

At Bearup's trial, the court incorrectly instructed jurors that he was eligible for parole, when he was not. It did not, however, deny Bearup the *opportunity* to have the jury informed of his parole ineligibility through a curative instruction, as Bearup did not request one. Nor did he ask to inform the jury himself of such ineligibility. To the extent Bearup claims that the court denied him due process, it did not deny him due process under *Simmons*.

Bearup further asserts that the Court should reconsider and reverse its finding that his *Simmons*/*Lynch II* claim lacks merit, by implying that *Cruz II* and *Burns* are intervening changes in controlling law, noting that four of the petitioners in *Burns* who had raised *Simmons* claims never sought a parole ineligibility instruction in the manner described in *Bush*. (*See* Doc. 151 at 6, 9–10; Doc. 155 at 2–4.) But the narrow issue raised in *Burns* was

"the same question presented" in *Cruz II*—"[w]hether the Arizona Supreme Court's holding that Arizona Rule of Criminal Procedure 32.1(g) precluded post-conviction relief [that was] an adequate and independent state-law ground for the judgment." *See Burns*, Joint Petition for Writ of Certiorari, No. 21-847 (U.S. Oct. 4, 2021). Neither *Cruz II,* nor *Burns*, *held* that a capital defendant's failure to invoke *Simmons* at trial was denied due process, where the trial court did not sua sponte give a *Simmons* instruction, and had inaccurately informed the jury that the defendant might be eligible for parole or release if not sentenced to death. *See e.g.*, *United States v. Castillo*, 69 F.4th 648, 657 (9th Cir. 2023) ("Surely, issues which are 'neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents,'" quoting *United States v. Kirilyuk*, 29 4th 1128, 1134 (9th Cir. 2022)); *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions.").

In a notice of supplemental authority, Bearup cites *Bronshtein v. Horn*, in which a Pennsylvania district court granted habeas relief based on *Simmons* even though "the petitioner did not object at trial to the trial court's failure to instruct the jury that life means life without parole." (Doc. 156, quoting No. CIV. A. 99-2186, 2001 WL 767593, at *18–21 and n.23 (E.D. Pa. July 5, 2001), *affirmed in part, reversed in part, and remanded*, 404 F.3d 700, 719 (3d Cir. 2005) (affirming *Simmons* relief)). But in *Bronshtein*, the court determined that there was no procedural default sufficient to prevent it from considering Bronshtein's claims on the merits, i.e., that no adequate clearly established state bar applied as of the time of waiver. The court further found that in denying relief, the state court had not reached the merits of his claims, *id.* at *11, and granted relief on Bronshtien's *Simmons* claim, *id.* at *18–19. The court did not consider Bronshtein's apparent failure to object at trial to the trial court's failure to give a *Simmons* instruction because the Pennsylvania supreme court had not relied on Bronshtien's failure to object at trial in finding his claims procedurally defaulted. *See id*. n.19, 23. And to the extent the habeas court considered the defendant's failure to object at trial, this Court agrees with the *Bush* and *Townes* courts'

reading of *Simmons*, i.e., it is the denial of a request for a *Simmons* instruction or denial of a motion to argue parole ineligibility at trial, that denies due process, not the trial court's failure to sua sponte give a *Simmons* instruction.[4] In sum, the Court finds that Bearup's *Simmons*/*Lynch II* claim lacks potential merit and thus does not warrant a *Rhines* stay.

*Cruz II* renders Bearup's *Simmons*/*Lynch II* claim unexhausted and his petition mixed. Nevertheless, that claim lacks potential merit, as it is plainly meritless for the reasons stated above and in the 2020 Order. Thus, the Court will deny reconsideration of that finding in the 2020 Order, and the Court will deny Claim 44. *See* 28 U.S.C. § 2254(b)(2) (allowing denial of unexhausted claims on the merits); *see also Lambrix v. Singletary*, 520 U.S. 518, 524–25 (1997) (explaining that the court may bypass the procedural default issue in the interest of judicial economy when the merits are clear but the procedural default issues are not); *Peavy v. Madden*, No.: 19cv0743-MMA (BGS), 2020 WL 4747722, at *14 (S.D. Cal. Aug. 17, 2020) (A claim is plainly meritless where 'it is perfectly clear that the petitioner has no hope of prevailing.' That same standard applies to whether this Court can deny an unexhausted claim on the merits."); *see*, *e.g.*, *Payne v. Thornell*, No. CV-20-0459-TUC-JAS (D. Ariz. June 28, 2023), Doc. 64.

## IV.   DISCUSSION ON MOTION TO AUTHORIZE

Bearup moves to authorize habeas counsel to represent him on successive state PCR under the Criminal Justice Act of 1964 (CJA), 18 U.S.C. § 3599(a)(2). (Doc. 152.) The CJA "provides for the appointment of [federal] counsel for . . . indigent[ ]" defendants in federal habeas cases, *Harbison v. Bell*, 556 U.S. 180, 184–85 (2009) (citing 18 U.S.C. § 3599(a)(2)), and requires counsel to represent them:

> throughout every subsequent stage of available judicial proceedings, including . . . all available post-conviction process, together with application for stays of execution and other appropriate motions and procedures and . . .

---

[4] Bearup also argues in Claim 45 that his trial counsel rendered ineffective assistance by not having the jury informed of his parole ineligibility. (Doc. 39 at 384–86.) Bearup states he will not raise Claim 45 in state court unless this Court grants a *Rhines* stay on his *Simmons*/*Lynch II* claim. (Doc. 155 at 9.) Therefore, the Court does not assess whether Claim 45 merits a *Rhines* stay.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.

18 U.S.C. § 3599(e). State postconviction review is not a stage "subsequent" to a federal habeas case. *See Harbison*, 556 U.S. at 189 (citing 28 U.S.C. § 2254(b)(1)) (explaining that "[p]etitioners must exhaust their claims in state court before seeking" the writ). Thus, "a state prisoner" lacks the "statutory right" to "federally paid counsel" in seeking state postconviction relief. *Lugo v. Sec'y, Florida Dep't of Corr.*, 750 F.3d 1198, 1213 (11th Cir. 2014) (citing *Harbison*, 556 U.S. at 189); *see also, e.g.*, *Hitcho v. Wetzel*, No. 16-1156, 2016 WL 8717228, at *3 (E.D. Pa. Oct. 14, 2016) (acknowledging *Lugo*).

Yet this Court may decide "on a case-by-case basis that it is appropriate" for counsel—"in the course of [their] federal habeas representation"—to exhaust claims in state court. *Harbison*, 556 U.S. at 190 n.7 (based on § 3599(e)'s provision that counsel may represent the prisoner "in 'other appropriate motions and procedures'"); *see also, e.g.*, *Gallegos v. Ryan*, No. CV-01-01909-PHX-NVW, 2017 WL 3822070, at *5 (D. Ariz. July 2017) (stating, based on *Harbison*, 556 U.S. at 190 n.7, that "this Court has the discretion to appoint federal counsel to represent [federal habeas petitioner] in state court").

In denying Bearup a *Rhines* stay, such authorization is inappropriate. *See, e.g.*, *Gallegos*, 2017 WL 3822070, at *2–5 (denying such authorization by denying a *Rhines* stay to exhaust a "time-barred" claim under 28 U.S.C. § 2244(d)(1) as futile); *see also Hardy v. Shinn*, No. CV-18-02494-PHX-JJT, 2021 WL 4060555, at *7 and n.3 (D. Ariz. Sept. 7, 2021) (denying authorization for capital habeas counsel to exhaust federal habeas claims in state court after denial of a *Rhines* stay where good cause not shown and where there were "indications" of "dilatory litigation tactics"); *Johnson v. Ryan*, No. CV-18-00889, 2019 WL 1227179, at *2 (D. Ariz. Mar. 15, 2019) (denying such authorization as "inappropriate and unnecessary" because petitioner was not "entitled to a *Rhines* stay," "together with the *Harbison* Court's discussion of [§ 3599(e)'s] parameters").

///

///

1     Accordingly,

2     **IT IS ORDERED denying** Claim 44 to the extent that it asserts a violation of

3  *Simmons* and *Lynch II*.

4     **IT IS FURTHER ORDERED granting** Bearup's Motion for Reconsideration as

5  to the finding that *Lynch II* was not a significant change in the law, **denying** the Motion as

6  to the finding that Bearup's *Simmons*/*Lynch II* claims lacks merit, and **denying** the

7  Motion's request for a *Rhines* stay (Doc. 151).

8     **IT IS FURTHER ORDERED denying** Bearup's Motion for Authorization to

9  Represent Petitioner in State Court (Doc. 152).

10     Dated this 29th day of August, 2023.

11

12

13                       Honorable Steven P. Logan
                              United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28