**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patrick Wade Bearup, | No. CV-16-03357-PHX-SPL |
| Petitioner, | **ORDER** |
| v. | DEATH PENALTY CASE |
| Ryan Thornell, et al., | |
| Respondents. | |

Petitioner Patrick Wade Bearup has moved for a stay and abeyance of this case under *Rhines v. Weber*, 544 U.S. 269 (2005), so that he can exhaust one of his habeas claims in state court. (Doc. 160 at 1–12.) He also asks the Court to authorize his habeas counsel to represent him in state court. (*Id.* at 1, 12–14.) Respondents oppose a stay and abeyance and take no position on the authorization request. (Doc. 161.) For the reasons below, the Court will grant Bearup's motion and will stay and hold this case in abeyance. The Court will also authorize habeas counsel to represent Bearup in state court.

**I.   BACKGROUND**

The relevant facts began in 1993, when the Arizona Legislature eliminated parole for felonies committed post-1993. A.R.S. § 41-1604.09(I) (1993). In the late 1990s, Bearup spent four years in prison for aggravated assault. (Doc. 46-2 at 191.) He was released in 2001 but was later charged as an accomplice in a 2002 kidnapping and murder.[1] (*See*

---

[1] In Arizona, an accomplice can be "criminally accountable" for another's conduct. A.R.S. § 13-303.

R.O.A. 1.) The State sought a death sentence for the murder, alleging two statutory aggravating circumstances: Bearup had been convicted of the "serious offense" of aggravated assault, *see* A.R.S. § 13-703(F)(2) (2002), and he committed the murder in an "especially heinous, cruel or depraved" way, *id*. at (6).[2] (R.O.A. 17.)

Prospective jurors in Bearup's murder case were required to complete a questionnaire created by the parties' counsel and approved by the court. (R.O.A. 210.) The questionnaire informed the prospective jurors about sentencing but incorrectly stated that if Bearup was convicted of the murder, but not sentenced to death, the court would sentence him to life in prison either with, or without, the possibility of "parole", despite the 1993 elimination of parole under A.R.S. § 41-1604.09(I).

After the parties' counsel reviewed the completed questionnaires, they conducted individual voir dire. The court and the prosecutor incorrectly told two prospective jurors, who later served on the jury, that if Bearup was convicted of murder but not sentenced to death, the court would sentence him to life in prison either with, or without, the possibility of "parole." (R.T. 11/6/06; R.T. 11/7/06 at 3–4, 131; R.T. 11/8/06; R.T. 11/14/06 at 13.) At no point during jury selection or trial did Bearup's counsel seek a curative instruction, informing the jury that Bearup was ineligible for "parole," and that if not sentenced to death, he could only be sentenced to life in prison without the possibility of "parole."[3] At the guilt phase, the jury found Bearup guilty as charged. *State v. Bearup*, 211 P.3d 684, 688 (Ariz 2009).

Bearup represented himself at the aggravation phase (R.T. 1/29/07 at 7–9), where the jury found both alleged aggravating circumstances, *Bearup*, 211 P.3d at 688. Bearup

---

[2] In Arizona, a defendant is ineligible for a death sentence unless he is convicted of a capital offense and at least one statutory aggravating circumstance is found. *State ex rel. Thomas v. Granville*, 123 P.3d 662, 666 (Ariz. 2005). If a jury finds at least one statutory aggravating circumstance, it must impose a death sentence if it finds "no mitigating circumstances sufficiently substantial to call for leniency." A.R.S. § 13-703(E) (2007).

[3] As discussed below, Bearup was only eligible for "release" (commutation or a pardon), but not "parole." *See Chaparro v. Shinn*, 459 P.3d 50, 54 ¶ 17 (Ariz. 2020).

also represented himself at the penalty phase and did not present mitigating evidence or inform the jury that he was ineligible for parole if not sentenced to death. (R.T. 1/29/07 at 9; R.T. 1/31/07 at 6–7; R.T. 2/1/07 at 6, 11–13.) Bearup allocuted to the jury that he did not actually kill the victim but that he would accept the jury's sentencing verdict.[4] (R.T. 2/1/07 at 11–13.) The court instructed the jury that in deciding whether to sentence Bearup to death, it could consider evidence from all three phases of trial, and that if it did not sentence Bearup to death, the court would sentence him to life in prison either with, or without, the possibility of "release," without explaining how "release" differed from "parole." (*Id*. at 9–10, 17.)

In closing at the penalty phase, the prosecutor argued that the jury should "focus" on Bearup's "major," "substantial," and "shockingly evil" role in the murder, as well as his prior conviction for aggravated assault, which the prosecutor described as a "very serious and violent offense." (*Id*. at 21–23.) The prosecutor also argued that Bearup was not "genuine[ly]" remorseful and had "chose[n] a path of violence," resulting in the "brutal heinous murder," within eight months of his release from prison. (*Id*. at 22–23.) Bearup, in closing, told the jury that he was not requesting "leniency" but instead was asking it to follow the law. (*Id*. at 24.) The jury deliberated for seven hours over three days (*id*. at 26; R.T. 2/5/07 at 3; Doc. 160 at 9), before it returned a death sentence, *Bearup*, 211 P.3d at 688.[5]

On direct appeal, the Arizona Supreme Court "independently review[ed]" the imposition of the death sentence. *Id*. at 693–96. Bearup alleged three mitigating circumstances on appeal: waiving the right to present mitigating evidence at the penalty phase, his "comparatively minor participation" in the murder, and the "disparity" between his death sentence and prison sentences for his co-defendants. *Id*. at 692–95. In addition, the supreme court also searched the record for other mitigation, *id*. at 696, without noting

---

[4] In Arizona, aside from their closing arguments, a capital defendant has a right to give a "mitigating statement" at sentencing. *State v. McCall*, 770 P.2d 1165, 1170 (Ariz. 1989).

[5] Respondents do not dispute the duration or course of jury deliberations.

that jurors had been incorrectly told that Bearup was eligible for "parole" if not sentenced to death. The supreme court affirmed the convictions and sentences, holding that the "limited mitigation" was insufficient to call for leniency, in light of the two "serious" aggravating circumstances. *Id*.

In May 2010, Bearup's postconviction-relief (PCR) case commenced, and in February 2014, Bearup's PCR counsel filed an amended PCR petition, raising claims of ineffective assistance of trial counsel (IAC) but did not include the substance of habeas Claim 45: trial counsel's failure to ensure the questionnaire accurately reflected that if not sentenced to death, Bearup was ineligible for parole, and the failure to seek a curative instruction regarding that incorrect information.[6] (Doc. 46-2 at 11–57, 71–87; CR-07-0048-AP "Docket.pdf" at 4.) In March 2015, the trial court dismissed the petition. (Doc. 46-3 at 262 (Ex. YYYYYY).)

On April 30, 2015, Bearup moved for rehearing and to amend the petition with new supportive evidence regarding a claim in the dismissed petition. The court denied the motions because it had already dismissed the petition, and the new evidence did not alter its conclusions. (*Id*. at 310–74 (Exs. HHHHHHH–JJJJJJJ).) In June 2015, Bearup filed a petition for review (PFR) in the Arizona Supreme Court; it denied the PFR in September 2016. (CR-15-0225-PC "Docket.pdf".)

Shortly thereafter, Bearup commenced this habeas case, and the Court appointed the Arizona Federal Public Defender's Office (FPD) to represent him in federal court but barred the FPD from representing him in state court, absent "express authorization." (Doc. 1; Doc. 6 at 1.) In Claim 45 of his amended habeas petition, Bearup raised an IAC claim based on trial counsel's failure to challenge jurors being incorrectly told that Bearup was eligible for parole if not sentenced to death. (Doc. 39 at 384–86.) He conceded that this claim was not raised in state court but was not procedurally defaulted and, alternatively, that the ineffective assistance of PCR counsel established cause and prejudice to excuse

---

[6] In Arizona, IAC claims, if any, must be raised in a PCR case, not on direct appeal. *State v. Spreitz*, 39 P.3d 525, 527 (Ariz. 2002).

- 4 -

the default. (*Id*. at 384.)

In early July 2024, Bearup filed a notice concerning the Arizona Supreme Court's decision in *State v. Anderson*, 547 P.3d 345 (Ariz. 2024),[7] and his intention, based on *Anderson*, to file a motion for stay and abeyance under *Rhines*, 544 U.S. 269, while he raises Claim 45 in state court. (Doc. 159.) Bearup subsequently filed his *Rhines* motion, which is fully briefed. (Docs. 160–62.)

## II. APPLICABLE LAW

### A. Rhines Stay

A "mixed" habeas petition—that is, one comprised of claims exhausted and unexhausted in state court—cannot be "adjudicate[d]" in federal district court. *Rhines*, 544 U.S. at 273. Under *Rhines*, the court may stay a habeas case with a "mixed" petition while the petitioner exhausts his unexhausted claims in state court, before returning to the court for review of the fully exhausted petition. *Id*. at 271–79. A *Rhines* stay is proper only if the petitioner shows (1) "good cause" for the failure to previously exhaust, (2) the unexhausted claim is "potentially meritorious," and (3) the petitioner did not "intentionally" use "dilatory litigation tactics." *Id*. at 277–78.

### B. Exhaustion

A *Rhines* stay should only be granted if a habeas petition contains an unexhausted claim for which there is an available remedy in state court. *See Rhines*, 554 U.S. at 271–79; *see also*, *e.g.*, *White v. Ryan*, No. CV-09- 2167-PHX-FJM (LOA), 2010 WL 1416054, at *12 (D. Ariz. Mar. 16, 2010). A claim is unexhausted if it can be raised in state court "by any available procedure." 28 U.S.C. § 2254(c). Conversely, a claim is exhausted if (1) it has been fairly presented to the highest state court with jurisdiction to consider it or (2) no state remedy remains available to exhaust the claim. *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996). A state remedy is *un*available if the state's procedural rules bar the state court from considering the claim, making the claim "technically exhausted." *See Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006); *Coleman v. Thompson*, 501 U.S. 722, 732

---

[7] *Anderson* is described below.

- 5 -

(1991). A technically exhausted claim need not be raised in state court. *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982).

For a claim to be found unexhausted, the district court must find that there is an available remedy in state court. *Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998), *overruled on other grounds by Martinez v. Ryan*, 566 U.S. 1 (2012). A district court may find a state remedy available if there is a "reasonable probability" of state relief. *Matias v. Oshiro*, 683 F.2d 318, 320 (9th Cir. 1982). A reasonable probability exists when it is "not clear" the claim will be procedurally barred. *Cassett v. Stewart*, 406 F.3d 614, 616 (9th Cir. 2005).

### C. Arizona's Bar on Successive IAC Claims

Rule 32 of the Arizona Rules of Criminal Procedure governs PCR cases for those convicted and sentenced at trial. Ariz. R. Crim. P. 32.1. Relief is available for IAC claims under Rule 32.1(a).[8] *Id.* at (a) and cmt.; *State v. Goldin*, 365 P.3d 364, 368, ¶ 14 (Ariz. Ct. App. 2015). When no IAC claim is raised in the first PCR case, Rule 32.2(a)(3) precludes all successive IAC claims unless they assert the violation of a "constitutional right that [can only] be waived knowingly, voluntarily, and personally by the defendant." Ariz. R. Crim. P. 32.2(a)(3). When an IAC claim was raised in the first PCR case, a successive IAC claim is precluded, even if the claim asserts the violation of a constitutional right that can only be waived knowingly, voluntarily, and personally by the defendant. *State v. Traverso*, 537 P.3d 345, 347–49, ¶¶ 9–13 (Ariz. Ct. App. 2023).

A non-capital defendant must file a notice of a Rule 32.1(a) PCR claim within 90 days after the oral pronouncement of sentence, Ariz. R. Crim. P. 32.4(b)(3)(A), but in a capital case, the Arizona Supreme Court files such notice with its mandate affirming the death sentence, *id.* at (C). For an untimely PCR case with a Rule 32.1 claim, a defendant must "adequately explain[]" why the untimely filing is not the "defendant's fault." *Id.* at 32.4(b)(3)(D).

---

[8] Rule 32.1(a) provides for relief on the basis that the defendant's conviction was obtained, or the sentence imposed, in violation of the state or federal constitutions.

- 6 -

### D.     *State v. Anderson*

Bearup argues that he has an available state remedy under *State v. Anderson*, and that a successive PCR raising Claim 45 is not procedurally defaulted or untimely. Respondents disagree.

On May 2, 2024, after Bearup commenced his habeas case in this Court, the Arizona Supreme Court issued its decision in *Anderson*, 547 P.3d 345 (Ariz. 2024). *Anderson* involved the following facts. Anderson was convicted by a jury of conspiracy to commit first-degree murder and sentenced to prison for "life without the possibility of *release* on any basis until the service of twenty-five years." *Anderson*, 547 P.3d at 348 (emphasis added). Before trial, Anderson rejected an alleged plea deal that would have resulted in a sentence of 18 to 22 years, after trial counsel advised him that if convicted at trial, he would be eligible for parole after 25 years. In the early 2000s, Anderson twice petitioned for PCR alleging IAC claims; both PCR cases were dismissed with prejudice. *Id*.

In 2022, as Anderson "attempted to enroll in an educational program" through the Arizona corrections department, he first learned, that contrary to trial counsel's advice, he was *not* eligible for parole at all. *Id*. Anderson then filed a third PCR asserting a new IAC claim based on trial counsel's incorrectly telling Anderson that he was eligible for parole. *Id*. The PCR court found the claim was *not* precluded under Rule 32.2(a)(3),[9] despite not being raised in Anderson's prior PCR cases but denied relief on the merits. *Id*. The Arizona Court of Appeals found the claim *was* precluded under Rule 32.2(a)(3) because it had not been raised in Anderson's previous PCR cases. *Id*. (citation omitted).

The Arizona Supreme Court reversed the Arizona Court of Appeals, finding the claim neither untimely nor precluded. *Id*. at 353–54. In finding the claim not untimely, the court applied Rule 32.4(b)(3)(A) (West 2020), which requires a notice of a Rule 32.1(a) PCR claims to be filed within 90 days after the oral pronouncement of a sentence unless

---

[9] Rule 32.2(a)(3) precludes postconviction relief on certain claims that could have been—but were not—raised at trial, on direct appeal, or on initial PCR. Ariz. R. Crim. P. 32.2(a)(3); *State v. Martinez*, 250 P.3d 241, 243, ¶ 8 (Ariz. Ct. App. 2011).

- 7 -

"'the defendant adequately explains why the failure to timely file a notice was not the defendant's fault'" under Rule 32.4(b)(3)(D) (West 2020). *Anderson*, 547 P.3d at 349–50 (quoting Ariz. R. Crim. P. 32.4(b)(3)(D)). The Arizona Supreme Court cited the "pervasive confusion" among "both the bench and bar" regarding the availability of "parole," rather than "release" when Anderson was sentenced. *Id.* at 348. It found that Anderson had adequately explained that the untimeliness of his third PCR was not his fault where, before trial, Anderson's counsel did not tell him that parole had been abolished and "instead incorrectly advised him that, if found guilty, he would be eligible for parole after [25] years." *Id.* at 350. It also found that "[h]is delay was not, as the court of appeals reasoned, the result of a 'mere failure to recognize a valid claim might exist.'" *Id.* (quoting *Anderson*, 2022 WL 17494588, at *1). The court reasoned, "Appellate courts, including [the Arizona Supreme Court], published decisions as late as 2013 indicating parole was still available for those convicted of felonies with the possibility of release after [25] years." *Id.* (citing cases).

In finding the claim not precluded, the court reasoned that, like in *State v. Diaz*, 340 P.3d 1069 (Ariz. 2014),[10] *Anderson* posed "unusual, albeit different circumstances," such that the successive PCR was not precluded. *Id.* at 351. It described that in 1993, the Arizona Legislature abolished "parole," but due to confusion about the abolition when Anderson filed his first two PCR cases, "defendants, attorneys, and courts did not know of or recognize" that telling a defendant that he was eligible for "parole," rather than "release," e.g., executive clemency or commutation, was incorrect. *Id.* (citing *Chaparro v. Shinn*, 459

---

[10] In *Diaz,* the Arizona Supreme Court found that petitioner's third PCR case was not precluded because two different attorneys had failed to file a PCR petition after petitioner had timely filed PCR notices in his first two PCR cases, resulting in the dismissal of the PCR cases. 340 P.3d at 1069; *see also id*. at 1070–71. Because counsel had never filed a petition, petitioner had never previously raised his IAC claims through no fault of his own. *See id*. at 1069–71. After petitioner noticed a third PCR, a third attorney timely filed a petition alleging claims for the first time, including that trial counsel rendered ineffective assistance regarding proffered plea agreements. *Id.* at 1070. The Arizona Supreme Court found the IAC claim raised in the third PCR was not precluded under the unusual circumstances of *that* case. *Id*. at 1069.

- 8 -

P.3d 50, 54 (Ariz. 2020), holding that "parole" was not synonymous with other forms of "release"). The Arizona Supreme Court explained that trial counsel's erroneous advice was not just a problem of "individual IAC" but also a "systemic failure to recognize" parole's abolition. *Id.* Citing this unique circumstance, the court found that Anderson could not have reasonably raised his IAC claim until his 2022 PCR notice. *Id.* That is, it found that the claim was not cognizable as a known claim when Anderson filed his prior PCR petitions. *Id.* For that reason, it found the claim un-precluded under Rule 32.2(a)(3). *Id*. at 353.

### III. DISCUSSION

#### A. Is Claim 45 Exhausted?

Because a *Rhines* stay may only be granted in a habeas case containing exhausted and unexhausted claims, the Court first considers whether Claim 45 is exhausted—that is, whether there is clearly no available remedy for relief in state court. *See King v. Ryan*, 564 F.3d 1133, 1140 (9th Cir. 2009); *Cassett*, 406 F.3d at 616. Bearup argues that he has an available state court remedy in light of *Anderson*. (*See* Doc. 160 at 2–5; Doc. 161 at 5–6.) *Anderson* is an "intervening change in the law" as to when a successive IAC claim—concerning a misstatement that a defendant will be eligible for "parole" if not sentenced to death—is procedurally barred as precluded or untimely under Rule 32. *See Morris v. Thornell*, No. CV-17-00926-PHX-DGC, 2024 WL 3091200, at *2 (D. Ariz. June 20, 2024). Respondents argue that Claim 45 is procedurally barred despite *Anderson*. The Court assesses whether either bar clearly applies to Claim 45 in light of *Anderson*. *See King*, 564 F.3d at 1140; *Cassett*, 406 F.3d at 616. If so, Bearup lacks an available state remedy for Claim 45 and his motion must be denied.

##### 1. Preclusion

In *Anderson*, the Arizona Supreme Court found a successive IAC claim, asserting trial counsel erroneously advised his client that he was eligible for parole, was not precluded. *Anderson*, 547 P.3d at 350–53, ¶¶ 20–26, 36. Stressing fairness, it refused to preclude the claim because the pervasive confusion about the availability of parole rendered the claim not cognizable as a known claim throughout Anderson's 2002 and 2003

PCR cases. *Id*. at 348, 350–53, ¶¶ 5–6, 20–26. Without determining when the pervasive confusion in the legal community ended, it noted that such confusion continued in state appellate courts as late as 2013 and concluded that Anderson—who no longer had PCR counsel—could not have "reasonably raised" the IAC claim until he himself discovered that trial counsel had incorrectly advised him, and he raised the claim in 2022. *Id*. at 348, 350–53, ¶¶ 5–6, 20–26, 36.

Bearup's PCR case continued until September 2016 (CR-15-0225-PC "Docket.pdf"). The Court first considers when the pervasive confusion in Arizona's legal community about the unavailability of parole ended and whether Claim 45 was cognizable while his PCR case, specifically his PFR, was pending in the Arizona Supreme Court. *See Morris*, 2024 WL 3091200.

In *Morris*, another division of this Court found that the pervasive confusion ended either in September 2015, when the Arizona Supreme Court clarified that parole was available only to certain juveniles and those who committed a felony pre-1994, *State v. Lynch* (*Lynch I*), 357 P.3d 119, 138 (Ariz. 2015), or in May 2016, when the United States Supreme Court held that the possibility of "release," such as commutation or pardon, rather than "parole," did not justify the trial court's refusal to instruct the jury that the defendant was *in*eligible for parole, *Lynch v. Arizona* (*Lynch II*), 578 U.S. 613 (2016) (per curiam). 2024 WL 3091200, at *3–4.[11] *Lynch I* and *II* were issued after the trial court dismissed Bearup's amended PCR petition and denied his motions to amend and for rehearing, and after Bearup filed his PFR, but before the Arizona Supreme Court ruled on the PFR. Thus, unlike the claim in *Anderson*, Claim 45 became cognizable as a known claim before Bearup's PCR case effectively ended and while Bearup had PCR counsel. (Doc. 46-2, Ex. RRRRR; CR-15-0225-PC "Docket.pdf".)

The Court must therefore determine whether Bearup's counsel clearly could have reasonably raised Claim 45, after the claim became cognizable as a known claim, no later than May 2016 following *Lynch II*, and before Bearup's PFR was denied in September

---

[11] This Court agrees with the reasoning in *Morris*.

2016. *See Cassett*, 406 F.3d at 616; *Anderson*, 547 P.3d at 350–53, ¶¶ 20–26, 36. The claim could have been reasonably raised *if* Bearup clearly had an available avenue for state relief before his PFR was denied in September 2016. *See Woodford*, 548 U.S. at 92–93; *Engle*, 456 U.S. at 125 n.28; *Cassett*, 406 F.3d at 616; *Johnson*, 88 F.3d at 829. If there was clearly an available avenue, then Claim 45 will be precluded as a successive IAC claim under Rule 32.2(a)(3). *See State v. Martinez*, 250 P.3d 241, 243, ¶ 8 (Ariz. Ct. App. 2011).

On the record before this Court, it is not clear that Bearup had an available avenue for state relief before his PCR case became final on the denial of his PFR and while he was represented by counsel. Bearup's amended PCR petition did not include Claim 45. In March 2015, the trial court dismissed Bearup's PCR case, and on April 30, 2015, it denied his motions to amend and for rehearing, prior to Claim 45 becoming a "known claim." Bearup filed his PFR in June 2015, also before Claim 45 became a "known claim." No earlier than September 2015, when *Lynch I* was decided and no later than May 2016, when *Lynch II* was decided, did Claim 45 become a "known claim." Moreover, it is unlikely that Bearup would have been able to amend his PFR with Claim 45 because a PFR must contain only issues previously decided. *See* Ariz. R. Crim. P. 32.16(c)(2)(B); *see also*, *e.g.*, *State v. Rowley*, No. 2 CA-CR 2023-0139-PR, 2023 WL 4677721, at *1, ¶ 4 (Ariz. Ct. App. July 21, 2023).

Rule of 32.9(d) of the Arizona Rules of Criminal Procedure permits amendments to a PCR petition for "good cause," and there is a "liberal policy toward" amendments. *Canion v. Cole*, 115 P.3d 1261, 1264, ¶ 16 (Ariz. 2005). But Arizona courts have inconsistently allowed amendment after a trial court's denial of PCR, much less while a PFR is pending before the Arizona Supreme Court. *Loya v. Shinn*, No. CV-19-02104-PHX-SRB, 2020 WL 5658976, at *6 n.9 (D. Ariz. Sept. 23, 2020). And the PCR court had already denied amendment before Claim 45 became cognizable as a known claim because the petition had been dismissed. (Doc. 46-3, Ex. JJJJJJJ.) Presumably, Bearup would have had to seek a stay in the Arizona Supreme Court and leave to return to the trial court to seek leave to amend to add Claim 45. It is doubtful that the Arizona Supreme Court or the

trial court would have granted either request. Under these circumstances, the Court finds that Bearup did not clearly have an available avenue for state relief on Claim 45 between when Claim 45 became cognizable as a known claim and the denial of Bearup's PFR.

Nor is it clear that Bearup had an available avenue to raise Claim 45 between the denial of his PFR and the issuance of *Anderson*. During most of this time, this habeas case was pending. Had Bearup's habeas counsel tried to raise Claim 45 in state court before *Anderson* issued, Claim 45 clearly would have been found precluded as a successive PCR, not unlike the Arizona Court of Appeals finding Anderson's claim precluded.[12] *See Martinez*, 250 P.3d at 243, ¶ 8. For similar reasons, it is at best speculative whether Bearup would have succeeded on appeal. Thus, the Court concludes that Bearup did not clearly have an available avenue for state relief on Claim 45 between when Claim 45 became cognizable as a known claim and issuance of *Anderson*.

The Court further concludes that there is a reasonable probability of state relief on Claim 45 under *Anderson*. The IAC claim in *Anderson* and Claim 45 center on IAC errors concerning whether a defendant was eligible for parole when tried. Based on the pervasive confusion described above regarding the availability of parole, neither claim was cognizable as a known claim when the initial PCR petitions were filed. Although Claim 45 became cognizable as a known claim before Bearup's PFR was denied and while Bearup had counsel, as discussed above, it is not clear that Bearup could have reasonably raised Claim 45 after it became cognizable, because Bearup did not clearly have an available avenue for state relief. The Court finds there is a reasonable probability that Claim 45 is not precluded under *Anderson* and under the principle of fairness on which *Anderson* rests.

Respondents argue that Claim 45 is clearly precluded. (Doc. 39 at 384.) They argue that by asserting that PCR counsel rendered ineffective assistance by not raising Claim 45 in the first PCR case, Bearup concedes that Claim 45 was cognizable as a known claim when the amended PCR petition was filed. (*Id*.) First, Claim 45 was not cognizable as a

---

[12] Indeed, this Court would have been unlikely to authorize habeas counsel to do so prior to *Anderson*.

- 12 -

known claim prior to the dismissal of the amended PCR petition, or even the filing of the PFR. Moreover, counsel may render ineffective assistance "even when the legal community has uniformly made the same error." *State v. Miller*, 485 P.3d 554, 558, ¶ 14 (Ariz. 2021) (citing *Padilla v. Kentucky*, 559 U.S. 356, 367 (2010)). And Bearup's PCR counsel filed the amended PCR petition a year before the pervasive confusion about availability of parole ended in the Arizona legal community under *Lynch I*. For these reasons, PCR counsel's failure to raise Claim 45 further supports that Claim 45 was not cognizable at relevant times and is unexhausted.

### 2. Timeliness

In *Anderson*, the Arizona Supreme Court found the successive IAC claim timely for the same reasons it found the claim not precluded. 547 P.3d at 349–50, 53, ¶¶ 15–19, 36. Assuming Rule 32.4(b)(3)(A), or any other timeliness rule, applies to successive PCR claims in a capital murder case,[13] it is not clear that Bearup cannot reasonably explain why he is not at fault for its untimeliness, analogous to why it is not precluded. Respondents, moreover, do not contend that the time between *Anderson*'s issuance and the filing of Bearup's *Rhines* motion clearly render Claim 45 untimely. In sum, Claim 45 is unexhausted because there is a reasonable probability that Bearup has an avenue for state relief under *Anderson*.

### B. Good Cause and No Intentional Dilatory Litigation Tactics

"Good cause" is not fully developed in the *Rhines* context. *Dixon v. Baker*, 847 F.3d 714, 720 (9th Cir. 2017). Nonetheless, the Court must determine whether good cause exists consistent with *Rhines*, which only permits a stay in "limited circumstances," and the

---

[13] A non-capital defendant like Anderson had to file his PCR notice within 90 days after entry of judgment. Ariz. R. Crim. P. 32.4(a)(2)(D) (West 2020). At the time of Bearup's first PCR, the Supreme Court clerk "expeditiously" filed a PCR notice "upon issuance of the mandate affirming the defendant's conviction and sentence on direct appeal." *Id.* at (b)(3)(C) (West 2010). *If* Rule 32.4(b)(3)(A)—or any other timeliness rule—applies to successive PCR claims in a capital case, a capital defendant's failure to raise an IAC claim in his first PCR care would be precluded unless he "adequately explains" why his failure to do so was not his fault under Rule 32.4(b)(3)(D) (West 2020), in light of *Anderson*.

- 13 -

Antiterrorism Effective Death Penalty Act of 1996, which seeks to promote finality and the proper exhaustion of claims. *Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008) (internal quotation marks omitted). "Good cause" does not demand "extraordinary circumstances," *id*. at 1023–24; it requires a "reasonable excuse, supported by sufficient evidence," to explain the failure to have previously exhausted the claim, *Blake v. Baker*, 745 F.3d 977, 982 (9th Cir. 2014). A bald statement does not suffice. *Id*.

For the same reasons the Court finds Claim 45 unexhausted under *Rhines*, good cause exists for Bearup's failure to have previously exhausted it. Respondents argue that those reasons incorrectly rely on the futility doctrine in *Sweet v. Cupp,* 640 F.2d 233 (9th Cir. 1981). (Doc. 161 at 6–7.) In *Sweet*, the Ninth Circuit excused the petitioner's failure to first exhaust in state court because it would have been futile. 640 F.2d at 236. The *Sweet* court defined the futility doctrine as excusing exhaustion when a state's highest court had resolved an issue adversely to the petitioner, and there was no reason to believe the court would reverse its stance. *Id.* The United States Supreme Court subsequently rejected the *Sweet* doctrine*. Engle*, 456 U.S. at 130. The Supreme Court explained that if a defendant believed that he "may find favor" on a constitutional claim in federal court but not in state court, he must still first present the issue to the state court if he has an available avenue for relief. *Id*.

Unlike *Sweet,* Bearup is not seeking to avoid state-court review of a habeas claim. *See Sweet*, 640 F.2d at 236. Bearup seeks state-court review of Claim 45 in order to exhaust it before the Court considers the petition. (Doc. 160.) Further, the *Sweet* doctrine applied to claims not raised in state court because the state's highest court had previously adversely resolved the issue on the merits. *See Sweet*, 640 F.2d at 236–37; *Engle*, 456 U.S. at 130. Respondents cite no case in which the Arizona Supreme Court has resolved the issue in Claim 45 on the merits. On this record, the Court finds there is good cause and does not

find intentional dilatory litigation tactics.[14]

### C. Potential Merit

The "potential merit" standard is not onerous. *Rhines*, 544 U.S. at 277. It does not require "conclusive[ ]" proof that the claim has merit. *Dixon*, 847 F.3d at 723. A claim has potential merit "unless 'it is perfectly clear that the petitioner has no hope of prevailing,'" *id*. at 722 (quoting *Cassett*, 406 F.3d at 624), that is, if it is "perfectly clear" that the claim is not "colorable," *Cassett*, 406 F.3d at 624. A claim without potential merit is "plainly meritless." *See Rhines*, 544 U.S. at 277.

Claim 45 has potential merit. The Sixth and Fourteenth Amendments entitle a criminal defendant to the effective assistance of trial counsel. *Reece v. State of Georgia*, 350 U.S. 85, 90 (1955) (Fourteenth Amendment); *Glasser v. United States*, 315 U.S. 60, 76 (1942) (Sixth Amendment), *superseded on other grounds by rule, as stated in Bourjaily v. United States*, 483 U.S. 171, 181 (1987). Because this right attaches at the start of "adversary judicial proceedings," it applies to jury selection and the guilt phase. *See Kirby v. Illinois*, 406 U.S. 682, 688–89 (1972) (plurality). A criminal defendant bears the burden to prove IAC by showing that counsel performed deficiently, and that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687–88, 691–92 (1984).

Claim 45's deficient-performance prong has potential merit. (Doc. 39 at 384–85.) In assessing counsel's performance, a court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *See Strickland*, 466 U.S. at 689. Counsel performs deficiently when their representation falls "below an objective standard of reasonableness" in light of "prevailing professional norms." *Id*. at 687–88. Misstating the law to a jury and failing to seek a curative instruction regarding such misstatement can be deficient performance. *E.g.*, *Lankford v. Arave*, 468

---

[14] Respondents do not assert that the time between *Anderson* and Bearup's *Rhines* motion negates good cause or reflects that Bearup used dilatory litigation tactics. (Doc. 161 at 5 n.6.)

- 15 -

F.3d 578 (9th Cir. 2006) (misstating law); *see also Wade v. Brockamp*, 342 P.3d 142, 152 (Or. App. 2015) (failure to object to misstatement); *cf. State v. Lizardi*, No. 2 CA-CR 2016-0381-PR, 2017 WL 491649, at *3, ¶ 12 (Ariz. Ct. App. Jan. 25, 2017) (denying, on the case record, IAC claim alleging failure to object to misstatement).

Respondents do not contest, and the record supports, that counsel performed deficiently. Bearup's counsel, and the prosecutor, created a juror questionnaire that incorrectly stated Bearup was eligible for parole if not sentenced to death. (R.O.A. 210 at 17.) Bearup's counsel also failed to object when the trial court approved the questionnaire or when the court and the prosecutor repeated the incorrect information to two prospective jurors, who later served on the jury. (R.T. 11/6/06 at 3–4; R.T. 11/14/06 at 13.) Nor did counsel seek to correct the instruction at any time while representing Bearup. These circumstances are sufficient to support potential merit of the deficient performance prong. *Lankford*, 468 F.3d 578; *Wade*, 342 P.3d at 152.

There is also potential merit to the prejudice prong of Claim 45. (Doc. 39 at 385–86.) Deficient performance is not prejudicial unless there is "a reasonable probability that, but for the deficiency," the trial's result would have been different. *Williams v. Taylor*, 529 U.S. 362, 394 (2000). The length of jury deliberations can support a finding of prejudice by implying that the jury "careful[ly] consider[ed] . . . the sentencing options." *See State v. Escalante-Orozco*, 386 P.3d 798, 830, ¶ 126 (Ariz. 2017), *abrogated on other grounds by State v. Escalante*, 425 P.3d 1078 (Ariz. 2018).

The absence of a curative instruction regarding the *un*availability of parole has been found "highly prejudicial." *See Carpenter v. Vaughn*, 296 F.3d 138, 158 (3d Cir. 2002). Whether an accused is eligible for parole is "crucial" to a jury's decision whether to impose a death sentence, especially when the accused's future dangerousness is an issue. *Simmons v. South Carolina*, 512 U.S. 154, 164 (1994). Past acts of violence can sharply imply future dangerousness, *Escalante-Orozco*, 386 P.3d at 830, ¶ 124 (citing *Kelly v. South Carolina*, 534 U.S. 246, 253 (2002)), and parole ineligibility may be the strongest guarantee of an accused's "future *non*dangerousness to the public," *Simmons*, 512 U.S. at 164 (emphasis

added). Hence, if the State rests its case for a death sentence "at least in part" on a defendant's future dangerousness, the alternative sentence of life imprisonment without parole will "necessarily undercut" the State's argument. *Id*. at 168–69.

The incorrect information that Bearup was eligible for parole if not sentenced to death played a key role at Bearup's sentencing. The issue of Bearup's future dangerousness arose before his trial and became the focal point of the penalty phase. The State argued Bearup's past violent acts as aggravating circumstances (R.O.A. 17) and rested its case for seeking a death sentence on his future dangerousness (R.T. 2/1/07 at 21–23). Yet Bearup's counsel helped create the questionnaire, which incorrectly stated that Bearup would be eligible for parole if not sentenced to death, and failed to try to correct that information. This sufficiently supports the potential merit of the prejudice prong. *See Simmons*, 512 U.S. at 164; *Carpenter*, 296 F.3d at 158.

Respondents argue that the prejudice argument lacks potential merit. (Doc. 161 at 9.) They assert that at the penalty phase, Bearup neither offered mitigating evidence nor asked for leniency. (*Id.*) Bearup, however, allocated to the jury that he did not actually kill the victim, and implied that his co-defendants received prison sentences. (R.T. 2/1/07 at 11–13.) Further, the trial court instructed the jurors to consider evidence from all three phases of trial (*id*. at 9–10), the jury deliberated Bearup's sentence for seven hours over three days. (*id*. at 26; R.T. 2/5/07 at 3; Doc. 160 at 9), and the Arizona Supreme Court found "limited" mitigating circumstances, without considering the incorrect information provided to the jury regarding Bearup's parole eligibility, *Bearup*, 211 P.3d at 695–96, ¶¶ 62–63. In short, Claim 45 has potential merit notwithstanding Bearup's waiver of the right to present mitigating evidence.

Respondents also argue that the trial court cured any prejudice by instructing the jury that Bearup would be eligible for "release" if the jury did not sentence him to death. (Doc. 161 at 8–9.) But the jurors were never instructed about the difference between "parole" and "release," commutation or pardon. Moreover, the Arizona Supreme Court has rejected the "release" argument raised by Respondents. *See*, *e.g.*, *Escalante-Orozco*, 386

1   P.3d at 828 & 830. Respondents otherwise assert that the Arizona Supreme Court's
2   independent review of Bearup's death sentence cured any prejudice. (Doc. 161 at 10–13.)
3   The court, however, performed the independent review amidst the ongoing widespread
4   confusion about the availability of parole amongst Arizona appellate courts. *See Anderson*,
5   547 P.3d at 351, ¶ 25. Nor did the court address jurors being informed that Bearup would
6   be eligible for parole if not sentenced to death. This Court cannot say that Bearup could
7   not prevail on Claim 45 in state court. The Court will grant Bearup's *Rhines* motion.

### IV.  AUTHORIZATION REQUEST

Bearup asks the Court to authorize his habeas counsel to represent him on successive state PCR under the Criminal Justice Act of 1964 (CJA), 18 U.S.C. § 3599(a)(2). (Doc. 160 at 12–14.) The CJA allows the appointment of counsel for "indigent" defendants in federal habeas cases, *Harbison v. Bell*, 556 U.S. 180, 184–85 (2009) (citing 18 U.S.C. § 3599(a)(2)), and through "every subsequent stage of available judicial proceedings . . . ." 18 U.S.C. § 3599(e). State PCR is not a stage "subsequent" to a federal habeas case. *See Harbison*, 556 U.S. at 189 (citing 28 U.S.C. § 2254(b)(1)). Because "[p]etitioners must exhaust their claims in state court before seeking" habeas relief, *id.*, a "state prisoner" lacks the "statutory right" to "federally paid counsel" on state PCR, *Lugo v. Sec'y, Florida Dep't of Corr.*, 750 F.3d 1198, 1213 (11th Cir. 2014) (citing *Harbison*, 556 U.S. at 189); *see also*, *e.g.*, *Hitcho v. Wetzel*, No. 16-1156, 2016 WL 8717228, at *3 (E.D. Pa. Oct. 14, 2016) (acknowledging *Lugo*).

Section 3599(e) nonetheless permits federal court to authorize habeas counsel to represent a prisoner in "other appropriate motions and procedures," 18 U.S.C. § 3599(e), and a federal court may authorize habeas counsel "on a case-by-case basis," to represent a habeas petitioner to exhaust the petitioner's claims in state court. *Harbison*, 556 U.S. at 190 n.7; *see also*, *e.g.*, *Gallegos v. Ryan*, No. CV-01-01909-PHX-NVW, 2017 WL 3822070, at *5 (D. Ariz. July 2017) (stating that, based on *Harbison*, this "Court has the discretion to appoint federal counsel to represent [federal habeas petitioner] in state court").

In granting Bearup's *Rhines* motion, the Court finds it appropriate to authorize

Bearup's habeas counsel to represent him in exhausting Claim 45 on state PCR. *See*, *e.g.*, *Eubanks v. Espinoza*, No. 17cv0016 BEN (MDD), 2019 WL 4889734, at *5–6 (S.D. Cal. Oct. 3, 2019) (citing *King*, 564 F.3d at 1141); *cf. Samayoa v. Davis*, No.: 00cv2118-W (AJB), 2022 WL 16753399, at *2–3 (S.D. Cal. Oct. 7, 2022) (authorizing federal defense counsel to represent petitioner on state habeas review because competency claim was ripe for review in state court). Bearup's successive state PCR case is "inextricably intertwined with his effort to obtain" the writ here. *See Walker v. Baker*, 2:15-cv-01240-RFB-GWF, 2016 WL 8735665, at *2 (D. Nev. Jan. 22, 2016). Habeas counsel investigated, researched, and argued Claim 45, as well as sought to develop evidence to support it. To conclude, authorization for habeas counsel to represent Bearup in a state PCR case serves the "interests of justice and judicial efficiency." *Id*. The Court will grant Bearup's authorization.

Accordingly,

**IT IS ORDERED granting** Bearup's motion to stay, abey, and authorize (Doc. 160); **staying** and **abeying** this case pending the resolution of Bearup's state-court PCR proceedings; and **authorizing** Bearup's habeas counsel to represent him in those proceedings.

**IT IS FURTHER ORDERED** that every **90 days**, starting from the filing date of this Order, Bearup must file a status report regarding his state PCR case, and that within **21 days** from the conclusion of the PCR case, including review, Bearup must move to lift the stay of this habeas case.

Dated this 30th day of September, 2024.

Honorable Steven P. Logan
United States District Judge